OPINION
Defendant-appellant Noah Spencer appeals from his conviction and sentence, following a no-contest plea, for Driving Under the Influence. Spencer contends that the trial court erred by denying his motion to suppress. We have reviewed the record, and we conclude that there is evidence in the record to support the trial court's findings that the arresting police officer had: (1) a reasonable and articulable suspicion to stop Spencer; (2) a reasonable basis for administering field sobriety tests; and (3) probable cause to arrest Spencer for DUI. Accordingly, the judgment of the trial court is Affirmed.
 I
Fairborn police officer Lee Cyr was watching a house, as part of an unrelated investigation, when he saw Spencer drive past him. The exhaust on Spencer's vehicle was "very loud," sounding "like he either had no muffler or the muffler had been severed from the rest of the exhaust system." Cyr was going to stop Spencer for a muffler violation, but before he could do so, he saw Spencer turn into the driveway of the very house he was watching. Cyr testified that: "Approximately 15 seconds after the car turned into the driveway, Mr. Spencer walked down the driveway, across the street, and while on the south side of the street walked westbound right towards me."
What happened thereafter was described by the magistrate who heard the suppression hearing, in findings announced orally at the conclusion of the hearing, as follows:
 I find before approaching the Defendant, he [Cyr] observed him walking, and the Defendant appeared to be staggering. Upon approaching him in regard to the defective muffler, he observed that the Defendant swayed while standing. He then detected a strong odor of alcoholic beverage emitting from the Defendant's person, as well as detecting slurred speech. On the horizontal gaze nystagmus test, he detected 6 clues. On the one-leg-stand, he observed the Defendant lose his balance 3 times, and, at that point, stopped the test for the Defendant's own safety. On the walk-and-turn, he observed all the indicators. The Defendant began the test 3 times prior to the completion of the instruction phase. Two times he went off the line. He used arms for balance, and did an improper turn. Based on all that, he [Cyr] had probable cause for Driving Under the Influence. He also was informed that the Defendant had no driving privileges from dispatch. And based on that, he had probable cause for Driving Under the Influence [sic, presumably Driving Under Suspension was meant].
Spencer was arrested and charged with Driving Under the Influence, Driving Under Suspension, and Defective Exhaust. Spencer moved to suppress the evidence, contending that it was obtained as the result of an unlawful stop and seizure. His suppression motion was heard before a magistrate, who found against him and denied the motion.
Spencer objected to the magistrate's decision. His objection was general. Spencer never did indicate his specific objections to the magistrate's decision.
The trial court reviewed the transcript of the suppression hearing, found no error in the magistrate's decision denying Spencer's motion to suppress, and adopted it as the order of the court. Thereafter, Spencer pled no contest to Driving Under the Influence. It appears that the other charges may have been dismissed. From his conviction and sentence for Driving Under the Influence, Spencer appeals.
 II
As a threshold matter, the State argues that Spencer is precluded from assigning error with respect to the denial of his motion to suppress because he made no specific objection to the magistrate's decision, citing Civ.R. 53(E)(3)(b). It is not entirely clear whether that requirement pertains to a traffic magistrate's decision. Although Civ.R. 53(A) provides that a magistrate appointed under that rule may also serve as a traffic magistrate, the Ohio Rules of Civil Procedure do not generally purport to apply to proceedings in traffic court. The Ohio Traffic Rules provide for the procedure to be followed in traffic courts. Traf. R. 14 provides for magistrates in traffic court. Traf. R. 14(C), which provides for the filing of objections to a magistrate's decision, does not include the requirement that, as a predicate to an assignment of error in a subsequent appeal, the party must have objected to the finding of fact or conclusion of law assigned as error.
We find it unnecessary to determine whether a party must object specifically to a finding of fact or conclusion of law of a traffic magistrate, as a predicate for an assignment of error on appeal. For the reasons set forth in Part III, below, we conclude that even if Spencer's assignment of error was properly preserved for review, it is without merit.
 III
Spencer's sole assignment of error is as follows:
 DEFENDANT/APPELLANT APPEALS THE DECISION OF THE LOWER COURT FOR FAILURE TO SUSTAIN HIS MOTION TO SUPPRESS FOR LACK OF PROBABLE CAUSE OR REASONABLE ARTICULABLE SUSPICION TO ARREST THIS DEFENDANT FOR DRIVING UNDER THE INFLUENCE OF ALCOHOL.
Spencer contends, generally, that Officer Cyr lacked sufficient cause to stop him, and, thereafter, to administer field sobriety tests. Specifically, Spencer contends that Cyr had insufficient reason to believe that Spencer had been driving (in other words, that he was the driver of the car that had just passed Cyr), and that Cyr did not observe any impaired driving.
From our review of the record, we conclude that Cyr's unrebutted testimony provides an ample basis for Cyr's conclusion that Spencer had been driving the car that had just passed by. This includes the following testimony:
Q. How did you come in contact with Mr. Spencer?
 A. I was working another case involving an Anthony Eldridge, who we believed to be at a particular residence on East Main Street, namely, 109 East Main. I was watching the house, looking for the possible company of Mr. Eldridge, when I observed the Defendant drive past me eastbound on Main Street.
Q. Did you make eye contact with the Defendant?
 A. Yes, sir. I was sitting in basically the center island where there is angled parking in the zero block of East Main Street. The Defendant drove past me. I looked at him. He looked at me. We weren't much farther apart than you and I.
* * * *
 Q. Okay. Did the Defendant make any comments when you addressed the issue of his exhaust?
 A. The only thing he said is, I'm already home, I'm not going anywhere, I'm not driving anywhere, those sort of things. Basically, he said, Hey, I made it home, leave me alone, that sort of thing.
* * * *
 Q. But as far as conversation, he made a statement to you that he had been home and wasn't driving, or words to that effect?
 A. No. I confronted him with the fact that, I was about to stop you, you had a loud exhaust on the car. He acknowledged there was a loud exhaust on the car. He acknowledged that he was driving. He stated, I parked the car. I've already been home. Now I'm walking.
 Q. Now, you didn't say that he acknowledged, on your direct examination, that he acknowledged driving. I think you stated it in a different way. Are you now saying that he told you that he was driving?
A. He didn't say it in those words.
Q. What did he say?
 A. When I told him, I was going to stop you for a loud exhaust, but you turned into the driveway. Now, I'm going to talk to you now about it, something of that nature. And he acknowledged that he was driving, he knew there was a loud exhaust on the car. He may have even said something to the effect that he was going to get it fixed sometime in the near future. But he said, Well, I'm not driving now. I parked the car and now I'm walking.
* * * *
 Q. All right. And no one is saying that — obviously, this is not a typical DUI where you actually stop someone, they're behind the wheel. You were certainly concerned as to whether or not you were able to prove that he was operating the vehicle, isn't that correct?
 A. I knew it was him operating the vehicle once he walked out onto the street. And the closer he got, the more convinced I was that that was the gentleman operating the GEO Metro.
 Q. And, in fact, in your narrative that you prepared that evening, or that morning, there is no mention whatsoever about the Defendant making statements to you, as you have indicated, is that correct?
A. No.
 Q. All right. Here is your alcohol influence report. You haven't indicated anything on there as far as a statement that the Defendant made to you about whether he was driving, is that correct?
A. It wasn't an issue at the time. I saw him driving.
We conclude that the testimony quoted above is an ample basis for police officer Cyr's having formed a reasonable and articulable suspicion that Spencer was driving the car that had just passed him.
Spencer next argues that because Cyr saw no traffic violations, or other evidence of impaired driving, he could not have had a reasonable and articulable suspicion that Spencer was Driving Under the Influence. Erratic driving is evidence from which a police officer might derive a reasonable and articulable suspicion that the driver is under the influence of alcohol, or some other drug. However, erratic driving is not an element of the offense. Although Officer Cyr did not observe any erratic driving, he had a legitimate reason to stop Spencer for the purpose of issuing a citation for the loud exhaust. During the stop, and even before, Cyr observed behavior that led him to conclude that Spencer was intoxicated, or, at least under the influence. Cyr's testimony on this subject includes the following:
Q. Okay. What happened next?
 A. I initiated contact with him [Spencer] in front of Foy's Diner.
Q. How did you do that?
 A. Got out of my car, walked over, and said, Come here, sir.
Q. What happened next?
 A. Made contact with him, tried to identify who he was. He didn't have any ID on him at the time or didn't provide me any ID at the time. I took his name and information. Made some observations about his physical characteristics. From immediate contact, I could detect a strong odor of an alcohol-associated beverage. Also, while I watched him walk and while I was standing there talking to him, he had a real problem with his balance. He swayed while he stood, he staggered when he walked, classic signs of intoxication.
 Q. Did you observe any of those things prior to actually speaking to the Defendant?
 A. Before I stepped out of my car, I watched him walk from 109 East Main across the street to where the Presbyterian church is and watched him walk approximately half a block. In doing so, I watched him stagger several times.
It was at this point that Cyr decided to administer field sobriety tests. "* * * an analysis of an investigatory stop leading to an arrest requires careful attention to each stage of the detention in order to make sure that the extent of the intrusion represented by each stage is warranted by the officer's reasonable and articulable suspicion at that point." State v. Smethurst (February 13, 1995), Clark App. No. 94-CA-24, unreported, at 3.
In State v. Dixon (December 1, 2000), Greene App. No. 2000-CA-30), unreported, another case in which the stopping police officer did not observe any erratic driving, we held that:
 The mere detection of an odor of alcohol, unaccompanied by any basis, drawn from the officer's experience or expertise, for correlating that odor with a level of intoxication that would likely impair the subject's driving ability, is not enough to establish that the subject was driving under the influence. Nor is the subject's admission that he had had one or two beers.
By contrast, in the case before us the stopping police officer testified to a "strong" odor of alcohol, as well as having observed Spencer swaying while standing, and staggering three times while walking half a block. These observations suggest intoxication, or at least that the person being observed is under the influence. In our view, they are sufficient to justify the administration of field sobriety tests.
Cyr first administered the horizontal gaze nystagmus test, finding 6 out 6 possible "cues," or indicators of intoxication. Cyr then administered the one-leg-stand test, during which Spencer lost his balance three times, nearly falling each time. This test was discontinued out of Cyr's concern for Spencer's safety. The next test administered was the walk-and-turn test, during which Spencer stepped off the line at least two times, took an incorrect number of steps, and used his arms for balance, moving them more than six inches from his body, all indicators, according to Cyr, of intoxication.
After Spencer's poor performance on the field sobriety tests, Cyr arrested him for DUI.
We conclude that Officer Cyr acted reasonably at all times. He had a legitimate basis to stop Spencer. He had a sufficient justification, based upon his observations, to administer field sobriety tests. When Spencer did poorly on all three field sobriety tests, Cyr had probable cause to arrest Spencer for DUI.
Spencer's sole assignment of error is overruled.
 IV
Spencer's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
 ________ FAIN, J.
WOLFF, P.J., and GRADY, J., concur.